Willis R. WINTERS, Appellant,

v.

C. H. LANGDEAU, Receiver of State National Life Insurance Company, Appellee.

No. 10932.

Court of Civil Appeals of Texas.

Austin.

Feb. 21, 1962.

Rehearing Denied March 14, 1962.

Russell & Tomlin, Pecos, for appellant.

Cecil C. Rotsch, John R. Grace and Horace Wimberly, Austin, for appellee.

HUGHES, Justice.

This suit was brought by C. H. Langdeau, Receiver of State National Life Insurance Company, against Willis R. Winters, appellant, to recover on a promissory note executed by Winters to the Insurance Company, prior to receivership, and to foreclose a deed of trust lien on certain real property given to secure payment of the note. Permanent receivership was granted July 6, 1960.

Appellant answered by pleading, under oath, total failure of consideration for the note. He also, by cross action, sought cancellation of the deed of trust as a cloud on the title to his land described in it.

On March 7, 1961, the Receiver filed motion for summary judgment. This motion was granted, the Court rendering judgment against appellant on the note and foreclosing the deed of trust lien.

Appellant's original answer contained the following sworn allegation:

"The Defendant says that in the month of December, 1959, one W. L. Bridges, Jr., who was then an officer and agent of State National Life Insurance Company, a Texas corporation, then and there acting within the course and scope of this authority as an executive of said corporation, came to Reeves County, Texas, where this Defendant resides and solicited this Defendant to execute the note and deed of trust sued on in this cause upon the representation and promise to this Defendant that the proceeds of said note would be de-

livered to this Defendant in the month of February, 1960, or about such time when this Defendant expected to require such funds for the purpose of financing the construction and installation of concrete ditch linings for farmers operating in Reeves County, Texas. That said Defendant, relying upon the promise and agreement of W. L. Bridges, Jr., who was then and there acting for and on behalf of State National Life Insurance Company a corporation, as an executive officer thereof, executed and delivered the note and deed of trust sued on in this cause and attached to Plaintiff's petition herein as Exhibits A and B, respectively. *The said W. L. Bridges, Jr. further represented to this Defendant at such time that he needed said obligations to show as assets of said State National Life Insurance Company* and that the proceeds of said note would be duly made available and disbursed to this Defendant upon demand in the month of February, 1960, or some time around such date. This Defendant alleges and shows to the Court that demand was made upon said State National Life Insurance Company to deliver to this Defendant the proceeds of said note in the month of February, 1960, but that such demand for delivery of said funds was refused, and said State National Life Insurance Company has ever since wholly failed and refused to deliver the proceeds of said note to this Defendant, to his damage in the sum of Sixty-Seven Thousand Five Hundred & No/100 ($67,500.00) Dollars." [1]  Italics added.

These allegations were amplified and carried forward in appellant's first amended original answer and cross action but with the allegation that Bridges represented that he needed the note to show as assets of the Insurance Company omitted.

Appellee's motion for summary judgment was based on the pleadings on file and the affidavit of Mr. Langdeau. This affidavit (3–7–61) was to the effect that the material allegations of appellee's first amended petition were true, and of his knowledge known to be true.

An amended affidavit was filed by Mr. Langdeau on April 24, 1961. Attached to this affidavit as an exhibit was a correct reproduction of a check [2] dated December 29, 1959, payable to the order of Willis R. Winters in the principal sum of $67,500.00 signed by the State National Life Insurance Company by M. L. Bishop and W. L. Bridges, Jr. and drawn on the First National Bank of Richland, Texas. This check bears the endorsement of Willis R. Winters and by perforated letters and figures shows that, after having passed through several banks, it was paid January 5, 1960.

Appellant's affidavit, filed April 24, 1961, in answer to appellee's motion for summary judgment repeats and amplifies the substance of his allegations in the first amended original answer but contains these additional statements:

"That W. L. Bridges, Jr. made no statement to this affiant that State National Life Insurance Company was not solvent and was not in a position to lend such funds, and this affiant had no reason to believe State National Life Insurance Company was in any financial difficulty or that such State National Life Insurance Company could not validly contract and agree with this affiant to advance the full face amount of any promissory notes delivered by this affiant to said insurance company.

"Affiant further deposes and says that on or about December 29, 1959, he executed and delivered to State National Life Insurance Company the

---

1. This portion of the answer was introduced in evidence on the summary judgment hearing.

2. The original of this check was among the files of the Insurance Company now in the hands of the Receiver, Langdeau.

promissory deed of trust note sued on in Cause No. 117,880, pending in this Court, and that on or about December 30, 1959, this affiant executed and delivered to State National Life Insurance Company the promissory note sued on in Cause No. 117,879 pending in this Court, and to secure said notes, executed and delivered the respective deeds of trust sought to be foreclosed in said respective causes. That said notes were executed and delivered for the sole and only purpose of the affiant obtaining the full amount of the principal shown on the face of each of said notes, for use in his business, and were not intended as an accommodation to State National Life Insurance Company, and were not intended as accommodation notes, and were not intended by this affiant to be used for any other purpose than to evidence the indebtedness of this affiant to State National Life Insurance Company for funds which this affiant expected State National Life Insurance Company to deliver to him, upon demand. * * *

"Affiant further deposes and says that any statements made in the pleadings in this cause that might be construed as an admission or assertion that this affiant delivered the aforesaid notes and deeds of trust for accommodation purposes, or for the purpose of bolstering the apparent assets of State National Life Insurance Company, are completely false and untrue, and this affiant states unequivocally that the execution and delivery of said respective notes and deeds of trust was for the purpose of acquiring the full amount of the funds represented by said notes, in cash, and not for any other purpose whatsoever. * * *

"Affiant further deposes and says that at some time during the month of January 1960 or in the early part of the month of February 1960, the exact date being unknown to this affiant, he did call upon State National Life Insurance Company to deliver to him the proceeds of the above described promissory notes. That when he made such demand, officials of State National Life Insurance Company advised this affiant that the company was in the hands of the State Insurance Commission, and that it would be impossible for the company to deliver the proceeds of such notes. Affiant further deposes and says that he has never, at any time, received any funds whatsoever from State National Life Insurance Company in payment for the notes sued on in said Cause No. 117,879 and No. 117,880. * * *

"Affiant further deposes and says that about the time that said attorney filed said pleas of privilege, he, the said attorney for affiant, instructed the affiant to pay the accrued and delinquent installments due on the notes sued on in said causes, in order, that, if said payments were accepted, acceleration of maturity of said notes would be waived, and acceleration of maturity could not thereafter be exercised, as regards either of said notes upon which such delinquent installments had been accepted. Affiant further deposes and says that it was not until some time subsequent to the date affiant had made such payments, that the affiant advised his said attorney that he had never received the proceeds of said promissory notes or either of them."

In a supplemental affidavit filed by appellant April 26, 1961, he states:

"I have read the amended affidavit of C. H. Langdeau filed in this cause in further support of his motion for Summary Judgment pending herein, and have examined a reproduction of a certain check dated December 29, 1959, No. 134, made payable to the order of Willis R. Winters for the sum of $67,-500.00, purportedly drawn by State National Life Insurance Company on the

First National Bank, Richland, Texas. I am not able to recall all of the conversations which occurred between myself and W. L. Bridges, Jr., on the occasion of the issuance of said check, but I do hereby categorically state that I never received the proceeds thereof; that I never, to this date, personally deposited said check to any account against which I could draw funds; that said check was never delivered out of the possession of the said W. L. Bridges, Jr. and was retained by him at all times, upon the understanding and agreement that the funds would remain in the hands of W. L. Bridges, Jr., as an officer, agent and executive of State National Life Insurance Company, until such time as I should demand the amount thereof as proceeds of the promissory note sued on in this cause.

"I am not able to state what person, firm or corporation may have received said check, but to the best of my knowledge and belief the proceeds thereof were retained by State National Life Insurance Company, and that if State National Life Insurance Company did not retain the funds represented by said check, that the same were retained by W. L. Bridges, Jr., acting for and on behalf of State National Life Insurance Company. I do hereby further depose and state that it was my understanding that said check was issued purely as a matter of record and for the purpose of making a bookkeeping and accounting entry thereon, and that I should not be required to pay any portion of the proceeds of the promissory note sued on herein, except to the extent that I actually drew said funds from said State National Life Insurance Company.

"I have recently discussed the transaction out of which this litigation ensued, with W. L. Bridges, Jr., in an attempt to refresh my memory regarding the circumstances surrounding the issuance of the check attached to Plaintiff's amended affidavit, but was unable to learn from W. L. Bridges, Jr. exactly what disposition was made of said check. The said W. L. Bridges, Jr. did, however, state to me that in all probability said check was simply redeposited shortly after its issuance, to the account of State National Life Insurance Company, to be held in a suspense account until such time as I requested delivery to me of the funds due me for my promissory note."

It is our opinion that the affidavits established, as a matter of law, appellant's liability on the note in suit.

Appellant seems to have been a vacillating affiant. He first swore, through his attorney, that the note and mortgage was needed to show as assets for the Insurance Company, and that the proceeds of the note would be made available to him in February, 1960. (Appellant's original petition filed July 13, 1960.) No mention in this pleading was made of the check dated December 29, 1959 for $67,500.00, endorsed by him which was paid seven days later.

On April 18, 1961, appellant swore in answering appellee's motion for summary judgment that the statement made in his former sworn pleading to the effect that the note was given to bolster the assets of the Insurance Company was false. In this affidavit, appellant also swore that he called upon the Insurance Company in January or early February 1960, to pay him the amount of his note but that payment was refused. He did not refer to or mention the Company's check of December 29, 1959, payable to and endorsed by him for the full amount, and ultimately paid.

In this affidavit appellant also admitted that he made payments on this note after the institution of this suit. Appellant attempts to swear these admissions away on the tenuous ground that his attorney instructed him to make such payments.

On April 24, 1961, appellant filed an affidavit in which he, for the first time,

mentioned the December 29, 1959 check, and this was in response to the affidavit by Mr. Langdeau in which the existence of the check was first revealed.

When we read and analyze the statements in this affidavit regarding the check along with other sworn testimony of appellant, we are convinced that appellant does not factually explain away the effect of his conduct in receiving and endorsing the check for the amount of his note. The check was a good check. Appellant did not receive or endorse it under compulsion. His act in endorsing the check and surrendering it to someone else was a voluntary act for which he, in our opinion, is fully responsible.

■ Where did the proceeds of this check go? The affidavits do not show. Surely it was incumbent upon appellant to show that this money was returned to the Insurance Company if appellant is to claim any benefit based on such fact.

■ The unsworn statement appellant attributes to W. L. Bridges, Jr. regarding the check is patently insufficient to establish the disposition of the check. Appellant frankly admits that he "was unable to learn from W. L. Bridges, Jr. exactly what disposition was made of said check." The "probabilities" declared by Mr. Bridges were only that, and were not factual statements required by Rule 166-A, Texas Rules of Civil Procedure. Furthermore, they are hearsay. When such statements were made by Mr. Bridges he was not then an officer of the Insurance Company. See: Box v. Bates, 346 S.W.2d 317, Supreme Court.

■ All statements in the affidavit of April 24, 1961, made by appellant to the "best of his knowledge and belief" are not in compliance with Rule 166-A requiring such affidavits to be made on "personal knowledge." An affidavit made on "knowledge and belief" is insufficient as an affidavit, unless authorized by a special statute. See: Affidavits, 2 Tex.Jur.2d Sec. 23.

■ We accept appellant's statement that he never received the proceeds of this check and that he never "personally" deposited this check to any account against which he could draw checks. The fact remains that appellant endorsed this check and thus made possible its cashing by some unknown person. Appellant's statement that this check was never delivered out of the possession of Mr. Bridges and was retained by him at all times under an agreement that he would hold such funds for appellant is conclusively refuted by the record. The check was cashed. Its proceeds are, for all the record shows, gone with the wind.

It is our opinion that appellant's affidavits do not raise an issue of fact sufficient to constitute a defense to this suit.

The judgment of the Trial Court is affirmed.

Affirmed.